## Henry W. Fanker *v.* Charles A. Anderson et al., trading as the McKinney Oil Company, Appellants.

*Lease—Oil and gas lease—Landlord and tenant.*

An oil lease after providing for the payment of a royalty on the oil produced, further provided that " if gas is obtained in sufficient quantities and utilized off these premises, the consideration in full to the party of the first part shall be the free use thereof for domestic purposes, and one eighth of the gas sold for each and every gas well drilled on the premises herein described and piped off the same." The lessees were to have gas in sufficient quantities for the operation of the lease. *Held,* that the lease only gave to the lessor the right to the gas if it was obtained in sufficient quantities, after the lessees had used the gas for the purpose of operating their lease in a reasonable and proper manner.

Under the above lease a number of wells were drilled, and oil in paying quantities was found, and also some gas. It was claimed by the lessor that gas had been obtained in sufficient quantities and utilized off the premises to entitle him to receive free use thereof for domestic purposes. He also claimed and introduced evidence tending to show that the lessees sold gas from the wells for the purpose of pumping a well on an adjoining farm. These claims were resisted by the lessees, but there was evidence tending to sustain each of them. *Held,* that the case was for the jury.

Argued Nov. 2, 1895. Appeal, No. 200, Oct. T., 1895, by defendants, from judgment of C. P. No. 3, Allegheny Co., Feb. T., 1894, No. 406, on verdict for plaintiff. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Assumpsit to recover damages for an alleged breach of an oil lease. Before KENNEDY, P. J.

The material portions of the lease were as follows :

" The party of the first part grants the further privilege to the party of the second part of using sufficient water and gas from the premises herein leased necessary to the operation thereon, the right of way over and across said premises to the place of operating, together with the exclusive right to lay pipes to convey oil and gas from this, as well as adjoining farms ; the right to remove any machinery or fixtures placed on said premises by him.

" The party of the second part, his heirs or assigns, to have and to hold the said premises for the said purposes only, for and during the term of fifteen (15) years from the date thereof, and as much longer as oil or gas is found in paying quantities, or the hereinafter described rental is paid. The said party of the second part, in consideration of the said grant and demise, agree to give to the party of the first part the full, equal one-eighth part of all the petroleum oil obtained or produced on the premises herein leased, and to deliver the same in tanks or pipe lines to the credit of the party of the first part. It is further agreed that if gas is obtained in sufficient quantities and utilized off these premises, the consideration in full to the party of the first part shall be the free use thereof for domestic purposes, and one-eighth of gas sold for each and every gas well drilled on the premises herein described and piped off the same, payable in thirty days after the pipe line is laid."

A number of wells were drilled, and oil was found in paying quantities. Some gas was also found.

Plaintiff introduced evidence which tended to show that gas had been found in sufficient quantities, and utilized off the premises to entitle him to receive free use thereof for domestic purposes. He also introduced evidence to show that the defendant sold gas from the well for the purpose of pumping a well on an adjoining farm.

The court charged in part as follows :

[The lease only gives to the plaintiff here the right to the gas if it is obtained in sufficient quantities, after the defendants have used the gas for the purpose of operating their lease in a reasonable and proper manner. If there is a sufficient quantity left after its use in a reasonable manner by the defendants, and to supply the plaintiff for domestic purposes, then he is entitled to receive it, and only then. If it is utilized off the premises by pipes, and marketed away from the premises, he is entitled to a one eighth of the gas sold and utilized off the premises.] [4]

Now, the plaintiff claims that in the operation of this lease there was not only an abundance of gas for the operation of the lease, but that there was gas there going to waste ; that it was burning in torches upon the premises that were wholly unnecessary in the proper operation of the lease ; that it was

escaping from pipes into the air and going to waste. He further claims that it was being used by the tenants of the defendants in a way that was not authorized under the lease, and that they were allowing other parties to use it. A man by the name of Seaton was mentioned as one of the parties who was using the gas. He claims that in other words if the defendant had used the gas in a reasonable and proper manner there was still sufficient left for his use for domestic purposes, and that the defendants were bound to supply him with gas for such purposes under the terms of the lease.

Now, as I have said, the defendants claim that there was not more than a sufficient amount of gas obtained from the premises for the operation of the lease in a reasonable and proper manner, and they have offered testimony tending to show that there was only a sufficient amount for their own purpose for the operation of the lease in this way. They claim that there was, in fact, a shortage of gas during the greater portion of the time, and they offered evidence showing that during the operation of the lease they had to purchase gas from other parties. I refer now to the gas furnished by Mr. McKirdy, evidence of which was given in the case. They had some testimony to show that during the operation of the lease they purchased wood from Mr. Fanker, the plaintiff here, to operate the lease, and that they not only did not have a surplus of gas after they had used it for their own purpose, but that there was a shortage and that they had to purchase other gas and other fuel in order to operate their leases properly. They claim further that in the operation of the leases in a proper way it was necessary for them to have these pipes for the escape of the gas, in order to regulate the pressure in the wells that were producing oil; that this escape of the gas through the pipes, in the manner that has been related by the witnesses, was nothing more than a reasonable, proper and safe manner of conducting the operations under this lease. They claim that the pressure of the gas in the wells, if allowed to accumulate to a great extent, interfered with the flow of the oil. They claim that this safety pipe appliance, which has been testified to in your hearing, was necessary in the proper operation of the lease; that without such an appliance the pressure of the gas accumulating in the wells interfered with the flow of the oil and

hence interfered with the proper operation of the lease. If that is the case, they are entitled to maintain those safety appliances, because they are only required to operate the lease in a reasonable and proper manner, and if such appliance was necessary for the proper operation of the lease, then they were justified in using that appliance, even if some of the gas did escape and go to waste.

But the plaintiff says that the wasting of the gas was wholly unnecessary, and he has witnesses to testify in your hearing that this waste was unnecessary and that the escape of the gas through the pipes, or the shutting of it in the well, did not interfere or affect in any way the flow of the oil from the well. So that is a question of fact for you to determine. But if you find that such appliances as were used by the defendants were needed in the proper operation of the well, then they were justified in using those appliances, even if some of the gas did escape. And the plaintiff again complains of that. [But if the waste was wholly unnecessary, if the use of the gas in the operation of the lease was in an unreasonable and improper manner, and the plaintiff here was deprived, by that improper or unreasonable use of the gas, of the gas which he was to have under the terms of the lease for domestic purposes, then he is entitled to recover for that. So that, gentlemen, is the first, and it seems to me the most important question for you to determine.] [5] The other item is claimed for gas sold. It seems that while the gas was not piped off the premises, yet there was an arrangement by which the defendants furnished steam for the pumping of the well on an adjoining farm, this Passavant well. The plaintiff claims that that was a use of the gas that was equivalent to the sale of the gas off the premises, because they received pay for that gas. But the defendants claim that under this arrangement for the pumping of the Passavant well they received, it is true, $35.00 in cash, but they also received gas from that very same well which served to furnish the heat for the pumping, and that no portion of that $35.00 was for gas used from these premises.

[Now, the burden is upon the plaintiff to show you what, if any, portion of this $35.00 a month cash was in payment for gas produced from the Fanker farm, or in other words, what portion, if any, of the gas used in the production of steam, or

for the pumping of this Passavant well, was derived from the Fanker farm. If any portion of that gas, or if any of the cash payments that were made went to pay for the gas produced upon these premises, for that much of it the plaintiff is to be allowed his proportion.

But the defendants claim that there was no portion of the cash payment made for the gas. That while they received the $35.00 a month for the pumping of that well, they also received gas from the same well in lieu of the gas that was furnished from the Fanker farm, and that no portion of that cash payment of $35.00 a month, is the plaintiff entitled to. If any portion of it is for the gas from the Fanker farm, to his portion of that is the plaintiff entitled. But as I have said, the burden is upon him to show what, if any, portion of the cash payment was for the gas.] [6]

The defendants' points were as follows:

2. By the covenant in the lease offered in evidence by the plaintiff, the defendants were granted the privilege of using sufficient gas from the premises necessary to operate the same, and if they did not pipe off the gas from the lease and sell it, plaintiff cannot recover for gas sold. *Answer :* This is affirmed, unless, as I have heretofore said to you, you find that in the arrangements for pumping the Passavant well defendants received some payment for gas produced from the Fanker farm, that is, some portion of the money was for gas produced from the Fanker farm. [1]

3. There is no sufficient evidence to justify the jury in finding that gas was produced on the Fanker farm in such quantities that it could be utilized off said premises, as provided in the lease, and therefore plaintiff cannot recover. *Answer :* This is refused. [2]

4. There is no evidence that gas was sold off the premises, and plaintiff cannot recover any sum for or on that account. *Answer :* This is affirmed with the same qualification I have given in answer to the second point; that is, unless you find that in the arrangement for pumping the Passavant well the defendants received some payment for the gas produced from the Fanker farm, that is, some portion of the cash was for the gas produced from the Fanker farm.

Verdict and judgment for plaintiff for $171.28. Defendants appealed.

*Error assigned*, among others, was (1–6) above instructions, quoting them.

*J. McF. Carpenter, J. W. McQuistion* with him, for appellant.

*William Yost*, for appellee, filed no paper-book.

PER CURIAM, January 6, 1896 :

This action was brought on a lease of land for oil and gas purposes.  After providing for the payment of a royalty on the oil produced, the lease contains the following clause, which is the basis of this suit: "It is further agreed that if gas is obtained in sufficient quantities and utilized off these premises, the consideration in full to the party of the first part shall be the free use thereof for domestic purposes, and one eighth of the gas sold for each and every gas well drilled on the premises herein described and piped off the same."  A number of wells —producing oil in paying quantities, and also some gas in greater or less quantities—were drilled.  It was claimed by plaintiff that gas had been obtained in sufficient quantities and utilized off the premises to entitle him to receive free use thereof for domestic purposes.  He also claimed that defendant company sold gas obtained from these wells, for the purpose of pumping a well on an adjoining farm.  These items of claim were resisted by the defendant company, but there was some evidence tending to sustain each of them.  The testimony, it is true, was conflicting, but it was sufficient to warrant its submission to the jury on questions of fact which were exclusively for their consideration.  It was carefully submitted to them by the learned president of the common pleas in a clear, well guarded charge in which the provisions of the lease were properly construed, and the questions of fact involved correctly presented.

We find nothing in the record that would justify us in sustaining any of the assignments of error; nor do we think that either of the specifications requires further comment.

Judgment affirmed.